UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| NORRIS E. SOWADA & IRENE SOWADA, | Civil No. 09-3320 (MJD/LIB) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| JAMIE LUBERTS, MORRISON COUNTY, KAJ MEINHARDT AND THE STATE OF MINNESOTA, | |
| Defendants. | |

This matter came before the undersigned United States Magistrate Judge upon the Motion of the Defendants Kaj Meinhard, the State of Minnesota (collectively "State Defendants"), Jamie Luberts, and Morrison County (collectively "County Defendants") to enforce the settlement agreement between Plaintiffs Norris E. Sowada and Irene Sowada and the Defendants. The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). For reasons which follow, the Court recommends that the Motion to Enforce the Settlement Agreement be GRANTED.

**I.    BACKGROUND**

Plaintiff Norris E. Sowada brought the present action alleging that the Defendants used excessive force against him during a traffic stop and arrest. In addition, Irene Sowada, his wife, brought a claim asserting loss of consortium. On September 30, 2010, County Defendants' attorney Daniel Kurtz, State Defendants' attorney Marsha Eldot Devine and Plaintiffs' attorney Dawn Weber appeared before Magistrate Judge Leo I. Brisbois for a hearing regarding the County Defendants' motion to compel Plaintiff to appear at an additional deposition and Plaintiffs' counsel's motion to withdraw from representing the Plaintiffs in this case. (Devine

Aff. [Docket No. 36], p. 1); see also Notice of Hearing on Motion to Compel Deposition [Docket No. 17]; Notice of Hearing on Motion to Withdraw [Docket No. 30]. However, instead of proceeding with the hearing, the parties agreed to enter into settlement negotiations facilitated by Magistrate Judge Brisbois. (Devine Aff., p. 2).

After engaging in negotiations facilitated by Magistrate Judge Brisbois for three hours, the Defendants made a final offer to settle the case for $12,500. (Kurtz Aff., [Docket No. 42, p. 2). The Plaintiffs initially declined. Id. However, right before the hearing on the motions was supposed to recommence, Plaintiffs' attorney informed the Defendants' attorneys that the Plaintiffs would after-all accept the Defendants' $12,500 offer. (Kurtz Aff., p. 3). The parties informed Magistrate Judge Brisbois that they had reached a settlement. Id. The parties' agreement was placed on the record in open court. (Devine Aff., Ex. A, Transcript of Proceedings). On the record, Magistrate Judge Brisbois stated the terms of the settlement including the amount of the settlement, that it would be paid jointly by State Defendants and County Defendants, that the settlement included all attorneys fees and costs, and that the Plaintiffs were responsible for the past Medicare lien stemming from this matter. (Devine Aff., Ex. A, Transcript of Proceedings, p. 3-8.

As Magistrate Judge Brisbois stated during the proceedings,

> "My understanding of the settlement that has been reached by the parties is that in exchange for a full, final release by the plaintiffs of all claims - - and that's by both plaintiffs - - of all claims that have been brought, or could have been brought, as a result of the incident which gives rise to this matter against all defendants - - individuals and Municipal and State - - will be dismissed with prejudice; that the settlement will be - - that there will be no admission of fault on the part of the defendants, that any Medicare subrogation lien - - the understanding is that it's less than a thousand dollars - - will be satisfied by the plaintiffs out of the settlement amount, and the amount of the settlement in total - - this is a combined settlement - - with contributions by all defendants, is $12,500."

...

(Devine Aff., Ex. A., Transcript of Proceedings p. 4-5). In addition, Magistrate Judge Brisbois noted on the record that although no future medical needs stemming from the incident were anticipated by the parties, if any additional medical needs arose resulting in a Medicare lien, the Plaintiffs would be responsible for paying the amount of that lien and any additional, future medical expenses. Id. at p. 4-5. Then, each of the parties, through their counsel, agreed to the terms of the settlement agreement on the record. Id.

After stating the terms and obtaining the parties' agreement, Magistrate Judge Brisbois confirmed that a settlement agreement existed by stating, "Well, the Settlement agreement - - it's on the record, the sides have agreed to it, and - - it's a contract. I mean if there's issues about enforcement, those are different motions that you'll have to bring up at that time." Id. at p. 7. Moreover, the parties' through their counsel agreed that the final settlement documents would be drafted with cooperation from all parties' attorneys and would include the details of the settlement as set forth on the record. Id. at p. 6. Furthermore, the parties agreed that the Plaintiffs' attorney's motion to withdraw and the Defendants' motion to compel deposition were withdrawn. Id. at p. 7. The court minutes also indicated that a settlement had been reached. (Kurtz Aff., Ex. B).

The parties' attorneys engaged in back and forth discussions via email regarding the language of the written document memorializingthe settlement agreement. (Kurtz Aff., p. 3, Ex. C). On October 27, 2010, after the parties' attorneys had an opportunity to review and revise the final draft of the Settlement Agreement, State Defendants' counsel sent an original Settlement Agreement, Stipulation of Dismissal with Prejudice, and a Proposed Order of Dismiss with Prejudice and Judgment to Plaintiffs' counsel in order to obtain Plaintiffs' signature. (Devine Aff., p. 2; Exs. B, B1, B2, & B3).

3

However, after all counsel had finalized the language of the written document memorializing the settlement agreement, the Plaintiffs did not sign the settlement documents. Plaintiffs' attorneys represented through communication with the County Defendants' attorney that the Plaintiffs were busy with work and did not have time to sign the documents. (Kurtz Aff., Ex. E). Even though the settlement documents were in their final form as of October 27, 2010, Plaintiffs' attorney represented that her clients were unwilling to sign the documents without spending some time discussing the documents' contents with their attorney, but due to work commitments, the parties would be unable to do so until January 1, 2011 at the earliest. (Kurtz Aff., Ex. F). Furthermore, Plaintiffs' attorney stated at the hearing on the present motion that she continued efforts to contact her clients by both voicemail and mail throughout January and February in an attempt to get them to sign the settlement documents. When the Plaintiffs failed to execute the settlement documents despite their attorney's best efforts, the Defendants brought the present motion to enforce the settlement document on February 17, 2011. (Kurtz Aff., Ex. H).

## II.     STANDARD OF REVIEW

A district court possesses the inherent power to enforce a settlement agreement in a case pending on the court's docket. Butler v. LeeAnn Chin's Cuisine, 2008 WL 819767 at *2 (D. Minn. March 25, 2008); Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999). Courts retain such power as a means to further its policy "favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." Butler, 2008 WL 819767 at *2 (quoting Bergstrom v. Sears, Roebuck & Co., 532 F.Supp. 923, 934 (D. Minn. 1982)).

"A settlement agreement is essentially a contract, subject to contractual rules of interpretation and enforcement." Goddard, Inc. v. Henry's Foods, Inc., 291 F.Supp.2d 1021, 1028

(D. Minn. 2003); Sheng v. Starkey Labs., Inc., 53 F.3d 192, 194 (8th Cir. 1995) ("Settlement agreements are governed by basic principles of contract law").  To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said there has been a "meeting of the minds" on the material terms of the agreement. Transclean Corp. v. Motorvac Techs., Inc., 2002 WL 31185886 at *8 (D. Minn. Sept. 30, 2002); Sheng v. Starkey Labs., Inc., 117 F.3d 1081, 1083 (8th Cir. 1997).  Courts determine the parties' intent to contract by examining the objective manifestations of the parties and not the parties' subjective, but unmanifested intent.  TNT Props., Ltd. v. Tri-Star Developers, LLC., 677 N.W.2d 94, 102 (Minn. Ct. App. 2004).  Only those terms upon which the settlement hinges are considered material terms.  Goddard, Inc., 291 F.Supp.2d at 1028.  However, leaving "insubstantial matters for later negotiation ... does not vitiate the validity of the agreement reached." Trnka v. Elanco Products Co., 709 F.2d 1223, 1226 n. 2 (8th Cir. 1983) (applying Minnesota law) (determining that the fact that the parties left some details for counsel to work out during later negotiations cannot be used to avoid an otherwise valid agreement).

### III.  DISCUSSION

In this case, Defendants seek to enforce an on the record settlement where Plaintiffs refuse to sign the written documents memorializing that settlement.  Plaintiffs themselves have offered no explanation as to why the settlement agreement is invalid and Plaintiffs' attorney agrees that a valid settlement was reached.  According to Plaintiffs' attorney's statements at the hearing on the present motion, the only reason Plaintiffs provided to her for their refusal to sign the settlement documents is that Mr. Sowada is apparently no longer satisfied with the settlement.  Plaintiffs make no additional arguments as to why the settlement agreement was not knowingly and voluntarily made.  Furthermore, the Court notes that the Plaintiffs were not

5

present at the hearing regarding the motion in order to provide a reason as to why the settlement agreement was not valid. Plaintiffs' counsel stated on the record that she informed her clients of the initial motion hearing date on Wednesday, March 23 in Duluth and the second hearing date of Friday, March 25 in St. Paul when the first hearing was cancelled due to inclement weather.

Before turning to whether a meeting of the minds was reached in this case, it's important to discuss the authority of the Plaintiffs' attorney to settle the case considering that on the day the settlement agreement was reached Plaintiffs' attorney was initially scheduled to be in front of the Court in order to be heard on her motion to withdraw as Plaintiff's attorney.  An attorney may settle a claim with the authorization of his client.  Rosenberg v. Townsend, Rosenberg & Young, Inc., 376 N.W.2d 434, 436 (Minn. Ct. App. 1985) (citing Burner Serv. and Combustion Controls Co. Inc. v. City of Minneapolis, 250 N.W.2d 224, 229 (Minn. 1977)).  In this case, significant evidence in the record supports a finding that Plaintiff's attorney had authority to settle the case. Local Rule 83.7 requires counsel to obtain permission of the Court before they can withdraw in a civil case.  The parties voluntarily initiated settlement discussions before the Plaintiffs' attorney's motion to withdraw was heard, and Plaintiffs' attorney withdrew her motion to withdraw as counsel on the record after settlement was reached.  The Court, therefore, never heard nor granted Plaintiffs' attorney, Dawn Weber, the right to withdraw in this case because the parties voluntarily engaged in settlement discussions before the motion was set to be argued to the Court.  Further, Ms. Weber represented on the record at the hearing on the present motion that she still served as the Plaintiffs' attorney and that they had not discharged her.  As such, Ms. Weber, has continued at all times to represent the Plaintiffs as counsel of record.

Additionally, the Plaintiffs were present at the settlement conference themselves and worked directly and closely with their attorney to reach a settlement agreement.  Plaintiffs'

attorney represented to Magistrate Judge Brisbois that she had authority to settle the case during the settlement negotiations on behalf of her clients. Plaintiffs never took any action during or after the settlement conference indicating to Magistrate Judge Brisbois or Defendants that their attorney did not have authority to settle or accept the Defendants' final offer. In fact, the Plaintiffs were present in the courtroom when the settlement agreement was read into the record and did not object to Ms. Weber's continued service as their attorney or make any verbal representations that they did not want to be bound by the settlement terms as stated on the record.

Finally, throughout the parties' contacts subsequent to the settlement conference, Plaintiffs' attorney continued to act as though she had full settlement authority by working on final language for the written document memorializing the settlement agreement and attempting to obtain her client's signature on the settlement documents. (Kurtz Aff., Exs. C, E, F, & H). "Where a client has created the appearance that his attorney has authority to settle a case and the attorney exceeds his authority in some way, if the adversary relies on the settlement to its detriment, the client may be estopped to deny his attorney's authority." Barry, 172 F.3d at 1015; see also Austin Farm Center, Inc. v. Austin Grain Co., 418 N.W.2d 181, 186 (Minn. Ct. App. 1988); Bergstrom v. Sears, Roebuck & Co., 532 F.Supp. 923, 933 (D. Minn. 1982) (applying federal law); see generally McGee v. Breezy Point Estates, 166 N.W.2d 81, 89 (1969). Here, Plaintiff's attorney continued to represent to the Defendants' attorneys that she was in contact with the Plaintiffs. (Kurtz Aff., Exs. E, F, & H). Defendants' attorneys and the Defendants, as well as the Magistrate Judge, relied on the Plaintiffs' attorney's authority to settle and undoubtedly altered the preparations for trial on the belief that settlement had been reached. Therefore, Plaintiffs' attorney possessed the authority to settle this case.

7

Additionally, in this case, the parties reached a meeting of the minds regarding all material terms. A meeting of the minds occurred because looking at the parties' objective intent, as the Court must, all the parties agreed to the material terms of the contract. TNT Props., Ltd., 677 N.W.2d at 102. The Defendants made a final offer to the Plaintiffs during the settlement discussions. While the Plaintiffs initially declined the offer, but before it was withdrawn by the Defendants, they ultimately accepted the offer for $12,500 from the Defendants right before the hearing on the pending motions was set to begin. Thereafter, Magistrate Judge Brisbois set forth the material terms of the agreement on the record and all the parties agreed to them. Notably, neither Plaintiffs nor their attorney objected at any time during the proceedings on the record suggesting that they did not want to be bound by the agreement. Based on the objective representations of the parties' attorneys acting on behalf of the parties themselves, Magistrate Judge Brisbois stated, "Well, the Settlement agreement - - it's on the record, the sides have agreed to it, and - - it's a contract. I mean if there's issues about enforcement, those are different motions that you'll have to bring up at that time." (Devine Aff., Ex. A, Transcript of Agreement, p. 7). Nothing in the record suggests that the Plaintiffs did not intend to enter into the settlement agreement.

In addition, all the material terms upon which settlement "hinges" were set forth in the agreement made on the record. Goddard, Inc., 291 F.Supp.2d at 1028. These material terms included the final settlement amount, attorneys fees, costs, disbursements and the release of all future claims. Furthermore, even though the material settlement terms were not reduced into writing at the time of the proceedings in front of Magistrate Judge Brisbois, they are still enforceable. Under Minnesota law, which favors the settlement of disputes, a Court may enforce a settlement agreement that contemplates the execution of a later written document. Butler, 2008

WL 819767 at *2 (finding that a court may enforce a settlement agreement that contemplates the execution of a later written agreement).

The Court finds Rosenbloom v. General Nutrition Center, Inc., 2010 WL 1050297 (D. Minn. Mar. 18, 2010) instructive. In Rosenbloom, the parties participated in a settlement conference resulting in a settlement agreement. Rosenbloom, 2010 WL 1050297 at *1. The settlement agreement and its material terms were agreed to on the record. Id. Further, the agreement on the record indicated that the parties intended to memorialize the settlement agreement in a written document at a later date which both parties' attorneys would review. Id. After a final document was drafted, the Plaintiff refused to sign the document alleging that he did not believe he was bound until he signed the written document, that his mental health issues prevented him from fully understanding the terms of the agreement, and that counsel did not effectively represent him. Id. at *2-4. Unpersuaded, the Court enforced the settlement agreement.

Here, like in Rosenbloom, the parties agreed to the terms of the settlement on the record. As the court noted in Rosenbloom, "[a]n open court stipulation as to a settlement agreement is a contract but made with more solemnity and with better protection to the rights of the parties than ordinary contract made out of court." Id. at *3 (citing Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc, 528 F.3d 556, 560 (8th Cir. 2008)). According to the Court, the proceeding in open court is important because it demonstrates the parties' objective intent. Id. Similar to the plaintiff in Rosenbloom, if the Plaintiffs had any objection or reservations as to the terms of a settlement agreement in this case, they should have clearly expressed it during the court proceedings laying out the terms of the settlement agreement because courts are not "concerned with what the parties may have subjectively intended to say." Id.

For these reasons, the Court finds that the parties objectively reached a meeting of the minds sufficient to create a valid, enforceable settlement agreement. Therefore, the Court recommends that the Defendants' motion be granted and that the Plaintiffs be ordered to sign the necessary settlement documents which constitute Exhibits B1, B2 and B3 to the Marsha Eldot Devine Aff. (Docket No. 36). See Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d 1215 (8th Cir. 2005) (upholding district court's decision enforcing settlement agreement and ordering parties to sign the settlement documents); Clark v. School Bd. Of Bradford County, Fla, 2010 WL 4696063 (M.D. Fla. Oct. 13, 2010) (ordering the Plaintiff to sign the document memorializing the settlement agreement).

### III. DEFENDANTS' MOTION FOR SANCTIONS

The Defendants ask the Court to award them costs and attorneys fees incurred in bringing this motion. "[A]n award of attorneys' fees is permissible under a court's inherent powers as long as the person being sanctioned has demonstrated bad faith." Willhite v. Collins, 459 F.3d 866, 870 (8th Cir.2006). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).

On the basis of the record before the Court, the Court finds that the present motion was unnecessary. Plaintiffs have not provided any concrete reason as to why they believe the settlement agreement is unenforceable either in writing or in person. Further, Plaintiffs failed to attend the hearing regarding the motion even though their attorney notified them of the date. Moreover, the Court notes that the Plaintiffs' attorney stated on the record that she notified the Plaintiffs of the possible consequences of the motion to enforce the settlement agreement and, in fact, advised them that they could face possible sanctions for failing to sign the documents memorializing the settlement agreement. As such, the Court concludes that the Plaintiffs acted

in bad faith by refusing to sign the settlement documents and forcing the Defendants to bring this motion. Therefore, the Court awards each Defendant $1,050 to cover attorneys fees and costs associated with bringing the present motion. The Court bases this number on the County Defendants' representations that their counsel was charged a $150.00 per hour fee, and this Court's finding that a fee rate of 4150.00 per hour in Minnesota was more than reasonable. The Defendants additionally represented that they each spent 10-15 hours drafting their motion papers and traveling to the hearing on the motion. However, the Court determines that legal issues and facts involved in the present motion are not complex and are actually quite straightforward and should not reasonably have taken 10 hours or more to complete. Therefore, the Court awards each Defendant fees for 7 hours of work, which the Court finds to be a more reasonable amount of time which should have been necessary to prepare the present motion.

## IV. CONCLUSION

**IT IS HEREBY RECOMMENDED THAT:**

1. State Defendants' Motion to Enforce the Settlement Agreement [Docket No. 33] be GRANTED;

2. County Defendants' Motion to Enforce the Settlement Agreement [Docket No. 39] be GRANTED.

3. The Defendants' Request for Sanctions is GRANTED IN PART.

Dated: March 28, 2011          s/Leo I. Brisbois
                               Leo I. Brisbois
                               U.S. MAGISTRATE JUDGE


**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 11, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.